IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEL BILLUPS, et al.,            :<br>              Plaintiffs,             :<br>                                          :<br>    v.                                   :<br>                                          :<br>PENN STATE MILTON S.        :<br>HERSHEY MEDICAL CENTER, :<br>et al.,                                  :<br>              Defendants.          : | 1-11-cv-01784<br><br>(Judge Kane)<br>(Magistrate Judge Saporito) |

## MEMORANDUM

The matters presently pending before the court are the plaintiffs' motion for a protective order (Doc. 182) and motion to compel discovery (Doc. 190). The motion for a protective order relates to the production and protection of the personal and business emails of Dr. Julie Mack, a physician employed by Penn State Milton S. Hershey Medical Center ("Penn State Hershey") and an expert witness for plaintiff Jamel Billups in his underlying criminal case. The motion to compel discovery relates to the defendants' production of all emails between Franklin County Assistant District Attorney Lauren Sulcove and defendants, Dias, Crowell, and Choudhary. For the reasons that follow, we will grant the motion for a protective order (Doc. 152) and deny the motion to compel (Doc. 190).

I. Background:

The court incorporates by reference the procedural and factual background set forth in Billups v. Penn State Milton S. Hershey Medical Center, 910 F. Supp. 2d 745, 750-55 (M.D. Pa. 2012), Billups v. Penn State Milton S. Hershey Medical Center, Civil No. 1:11-cv-1784, 2013 WL 4041161, at - *2 (M.D. Pa. Aug. 7, 2013), and Billups v. Penn State Milton S. Hershey Medical Center, Civil No. 1:11-cv-1784, 2014 WL 1334218, at *1 - *3 (M.D. Pa. Apr. 2, 2014).

A. Motion for Protective Order

Drs. Dias, Crowell, and Choudhary (the "Hershey defendants") are the only Hershey defendants that remain in this case. The plaintiffs' claim against the Hershey defendants is that the plaintiffs were denied substantive due process when these doctors allegedly misrepresented that all potential non-traumatic causes for L.B.'s injuries had been investigated and ruled out. On April 29, 2015, the Hershey defendants served a subpoena upon Dr. Mack seeking her deposition and production of emails from her personal and business accounts relating to the Billups matter. The subpoena commanded her to provide the following documents at her

deposition.

> Any and all communications and documents sent by or on behalf of Plaintiffs, Jamel Billups and Jacqueline Rosario, to Julie Mack, M.D. This includes all letters, emails, memoranda, and all other communications and documents. This includes documents and communications from both personal and business email accounts.
>
> Any and all communications and documents sent by or on behalf of Julie Mack, M.D. to Plaintiffs, Jamel Billups and Jacqueline Rosario, and/or their agents or representatives. This includes letters, emails, memoranda, and all other communications and documents. This includes documents and communications from both personal and business email accounts.
>
> Any and all communications and documents sent by or to Julie Mack, M.D. to or by any other individual which relate to the minor Plaintiff, L.B. This includes letters, emails, memoranda, and all other communications and documents. This includes documents and communication from both personal and business email accounts.

(Doc. 182-2). On May 4, 2015, the court and counsel conferred by telephone and it was agreed that Dr. Mack would turn over emails to plaintiffs' counsel who would then prepare a privilege log and forward it together with the unprotected emails to defense counsel.

The motion alleges that Dr. Mack informed plaintiffs' counsel that the general counsel for Penn State Hershey would not permit her to turn

3

over her business emails. Dr. Mack's deposition was rescheduled to August 28, 2015. Prior thereto, on August 6, 2015, the plaintiffs subpoenaed Penn State Hershey commanding it to produce, in relevant part, the following:

> Emails to or from Julie Mack, M.D related to plaintiff Jamel Billups, Jacqueline Rosario and/or L.B. from any server within the control of The Milton S. Hershey Medical Center. (Plaintiffs are seeking the same documents identified in the subpoena issued by counsel for Defendants Dias, Crowell and Choudhary on April 29, 2015, limited to solely those emails that were communications to or from Dr. Mack's business email account at Hershey. It is Plaintiffs' understanding that the Hershey server has already been searched for these emails, the emails have been identified and are readily available in response to Defendants Dias, Crowell and Choudhary's subpoena.)

(Doc. 182-5.)

The subject emails were produced and are currently held confidential pursuant to an understanding reached between counsel which we approved. (Doc. 196).[1] Dr. Mack's deposition took place as scheduled

---

[1] Despite producing the documents, counsel for the parties dispute whether the production was pursuant to the subpoena dated April 29, 2015, directed to Dr. Mack or the subpoena dated August 6, 2015, directed to Hershey Medical Center. The resolution of the motion for a protective order does not turn on which subpoena the documents were produced. This is yet another example of the long standing
(continued...)

on August 28, 2015. The day prior to the deposition, we conducted a telephone conference at counsel's request. During the conference, we were informed that plaintiffs' counsel had just received the production of approximately two-thousand pages of documents which included Dr. Mack's business emails. We directed that the parties agree upon a time frame within which plaintiffs would be permitted to file a motion for a protective order regarding the produced documents. We find and accept plaintiffs' motion as timely filed.

The plaintiffs maintain that the emails between counsel and plaintiffs' expert, Dr. Mack, are protected from disclosure by Penn State Hershey and/or Dr. Mack to the defendants by the work product doctrine and/or expert-witness trial-preparation protection under Fed. R. Civ. P. 26(b). (Doc. 184, at 4). The defendants posit that the issue before the court is whether Dr. Mack, as an employee of Penn State Hershey, had a reasonable expectation of privacy in her business email account in the face of a company policy which stated that all emails are owned by the employer and should not be expected to remain private. (Doc. 188-3, at 6).

---

[1](...continued)
contentiousness that has existed throughout this case.

In the alternative, the defendants argue that the plaintiffs waived work-product protection.

1. <u>Legal Standard</u>

Fed. R. Civ. P. 26(b)(4)(C) governs the resolution of this issue. Rule 26(b)(4)(C) protects most communications between counsel and their expert witness. Specifically, this rule:

> protect[s] communications between the party's attorney and any [expert who must provide a report], regardless of the form of the communications, except to the extent that the communications:
>
> (i)   relate to compensation for the expert's study or testimony;
>
> (ii)  identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

F. R. Civ. P. 26(b)(4)(c).

The advisory committee notes for the 2010 amendments to Rule 26 state that: "Rule 26(b)(4)(C) is added to provide work-product protection

for attorney-expert communication regardless of the form of the communications, whether oral, written, electronic, or otherwise." Fed. R. Civ. P. 26 advisory committee notes (2010). Further, these provisions were provided "to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." Id. If materials are protected under Rule 26(b)(4), the opposing party may obtain access to them only if it established that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Materials reflecting the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation "are entitled to absolute protection from disclosure in any event. See Fed. R. Civ. P. 26(b)(3)(B).

    2. Discussion

Rule 26(b)(1) provides generally that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party claiming a

privilege has the burden of establishing that a privilege applies. <u>Holmes v. Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124, 138 (3d Cir. 2000).

On September 24, 2015, the plaintiffs filed a privilege log (Doc. 182-6) that contains a list of email communications between and/or among plaintiffs' counsel, Dr. Mack, and/or other individuals that were withheld from disclosure. The plaintiffs maintain that the reasons for withholding these documents include both work-product and expert witness communications with plaintiffs' counsel. All of these communications occurred in 2010 and 2011, and all were made in connection with state criminal and family court proceedings that are indisputedly closely related to this litigation. The protection afforded under Rule 26(b)(4)(c) to communications between counsel and a testifying expert extend to these communication between counsel and a testifying expert in underlying litigation as well. <u>See</u> <u>In re Republic of Ecuador</u>, No. 4:11 mc 73-RH/WCS, 2012 WL 5519611, at *2 (N.D. Fla. Nov. 2, 2012); <u>Republic of Ecuador v. Bjorkman</u>, Civil Action No. 11-cv-01470-WYD-MED 2012 WL 12755, at *4 (N.D. Fla. Jan. 4, 2012); <u>see also</u> <u>In re Grand Jury Proceedings</u>, 604 F.2d

798, 803 (3d Cir. 1979) (material prepared in anticipation of civil litigation was subject to work product protection in related—albeit unanticipated—criminal grand jury proceedings); In re Polymedica Corp. Sec. Litig., 235 F.R.D. 28, 32 (D.Mass. 2006) ("[N]on-testifying experts are protected from discovery in sufficiently related litigation.") (prior to 2010 amendment extending similar protection to testifying experts). The defendants contend that the plaintiffs waived work-product protection by communicating with Dr. Mack via an email account provided to her by her primary employer, Hershey Medical Center, which also employs the three defendants. They argue that communications routed through email servers maintained by the common employer are, pursuant to company policy, not confidential, and thus any work-product protection was waived. In advancing this argument, the defendants rely on a line of cases establishing a four-factor test for determining whether communication via a work computer or email network can be considered private or confidential. See United States v. Nagle, Criminal No. 1:09-CR-381, 2010 WL 3896200, at 4* (M.D. Pa. Sept. 30, 2010); In re Asia Global Crossing Ltd., 322 B.R. 247, 257-58 (Bankr., S.D.N.Y. 2005). But these cases are

in apposite.[2] Both <u>Nagle</u> and <u>Asia Global Crossing</u> addressed whether the use of workplace computer email networks waived the <u>attorney-client privilege</u>. But

> [t]he purpose of the work-product doctrine differs from that of the attorney-client privilege....[T]he attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

---

[2] Moreover, based on the corporate email policy in evidence, the balance of factors weighs in the plaintiffs' favor. (<u>See</u> Doc. 188-2). Although the policy "encourages the business use of ... email, it does not expressly prohibit personal use." (Doc. 188-2, at 2). Although the policy notes that the employer "cannot guarantee email communications will be private," that "[g]enerally speaking, email communications [with outside recipients] are not secure," and that email "should always be thought of as indelible and discoverable," the policy explicity advises employees that "[r]epresentatives of [Hershey Medical Center] <u>do not</u> routinely inspect or monitor email." (<u>Id.</u> (emphasis added)). Although "Information Technology staff" and the "Information Security Officer" are permitted to access messages in individual employee's work email account, this access is limited to a very narrow set of circumstances, none of which would have permitted disclosure to the plaintiffs' adversaries—the Commonwealth in criminal and family court proceedings, or the three defendant doctors in this action—without a subpoena. (<u>Id.</u> at 3). <u>See generally</u> <u>Nagle</u>, 2010 WL 3896200, at *4.

Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427-28 (3d Cir. 1991).

> Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection.

Dempsey v. Bucknell Univ., 296 F.R.D. 323, 329 (M.D. Pa. 2013) (quoting Westinghouse, 951 F.2d at 1428). Here, the documents at issue are email communications between plaintiffs' counsel and Dr. Mack, a testifying expert in underlying state court proceedings. They were conveyed between counsel and expert via Dr. Mack's workplace email account, hosted on a computer or email network owned and maintained by her employer, Hershey Medical Center. Hershey Medical Center was not a party to the underlying state criminal and family court proceedings, and thus it was not plaintiffs' adversary, nor can it reasonably be said to be "a conduit to an adversary." See United States v. Deloitte LLP, 610 F.3d 129, 140 (D.C. Cir. 2010). Absent a subpoena, the prosecution in the underlying state proceedings had no access to these email messages. Nor

11

did the defendants, whose only legitimate access to these email communications is likewise limited to the use of a subpoena under the corporate email policy adopted by Hershey Medical Center.

Accordingly, the plaintiff's motion for a protective order (Doc. 182) will be granted, except to the extent that the email messages: (1) relate to compensation for Dr. Mack's study or testimony; (2) identify facts or data that plaintiffs' counsel provided and that Dr. Mack considered in forming the opinion to be expressed; or (3) identify assumptions that plaintiffs' counsel provided and that Dr. Mack relied on in forming the opinions to be expressed. See Fed. R. Civ. P 26(b)(4)(c).

B.   Motion to Compel

Recognizing the possibility of an adverse outcome on their motion for a protective order, the plaintiffs have filed a mirror-image motion to compel the disclosure of all emails between the prosecuting assistant district attorney and the Hershey defendants, each of whom was designated to serve as a testifying expert in the underlying state court proceedings. (Doc. 190). In support, they have adopted wholesale the arguments advanced by the defendants in opposition to their motion for

a protective order. In essence, the plaintiffs suggest that what's sauce for goose is sauce for gander. See generally Newman v. Checkrite California, Inc., 156 F.R.D. 659, 660 & n.1 (E.d. Cal. 1994).

As noted above, the Court has considered the merit of these sauce arguments in the context of the plaintiffs' motion for a protective order and found them unpersuasive. Moreover, the Court previously considered and ruled against the plaintiffs on this very same issue on an earlier motion to compel filed by the plaintiffs in this same case. See Billups, 2013 WL 4041161, at *4 - *7. We see no reason to revisit this issue. Accordingly, the plaintiffs' motion to compel discovery (Doc. 190) will be denied.

An appropriate order follows.

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: December 3, 2015